IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JENNIFER LYNN BELL,

        Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

        Defendant.

Case No. 16-cv-00809-MMC

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
DENYING DEFENDANT'S CROSS-
MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 21

Before the Court is plaintiff Jennifer Lynn Bell's ("Bell") motion for summary

judgment, filed June 28, 2016, by which Bell seeks judicial review of a decision issued

May 21, 2015, by an administrative law judge ("ALJ"), denying her claim for Social

Security benefits. Also before the Court is defendant Acting Commissioner of Social

Security Nancy A. Berryhill's ("Commissioner") cross-motion for summary judgment, filed

September 28, 2016. Pursuant to Civil Local Rule 16–5, the motions have been

submitted on the papers without oral argument. Having read and considered the parties'

respective written submissions, the Court rules as follows.

## BACKGROUND

On February 28, 2013, Bell protectively filed an application for Supplemental

Security Income benefits, alleging disability beginning October 23, 2010, based on

impairments including fibromyalgia, major depression, and post-traumatic stress disorder

("PTSD"). On August 23, 2013, the Social Security Administration ("SSA") denied the

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, as
Acting Commissioner of the Social Security Administration. See Fed. R. Civ. P. 25(d).

application and, on March 19, 2014, denied Bell's request for reconsideration.  On April 3, 2014, Bell requested a hearing before an ALJ, and, on January 27, 2015, the ALJ conducted a hearing, at which time Bell testified, as did a vocational expert ("VE").

At the hearing, Bell testified she became disabled in October 2010; that her last job was as an in-home caregiver for her son, until "the end of 2012" (see Certified Administrative Record ("CAR") 64); that she became homeless in September 2013; and that she currently was living in a rehabilitation facility ("facility"), on a one-month extension after having completed its six-month program on January 13, 2015.  In answering questions about the onset of her disability, the circumstances that kept her from working, and her schedule at the facility, Bell described her activities and symptoms, including mobility and concentration problems, fatigue, pain, and anxiety.  Prior to the hearing, Bell had described her activities and symptoms in two "Function Reports," one submitted in June 2013 (see id. 267–81), and the other in February 2014 (see id. 312–23).

Following Bell's testimony, the ALJ posed a series of employment hypotheticals to the VE, inquiring about Bell's ability to perform either "light" work[2] or "sedentary" work,[3] with specified restrictions.  (See id. 92–95.)  In response, the VE testified Bell could no longer perform her past relevant work,[4] given her current restriction to "unskilled" work

_____

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  See 20 C.F.R. § 416.967(b) (effective Aug. 20, 1980).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  See 20 C.F.R. § 419.967(a).

[4] The VE identified as Bell's past relevant work her prior jobs as a caregiver and

2

(see id. 93),[5] but could perform certain jobs in the "light" and "sedentary" categories, for each of which the VE identified three "examples" (see id. 93–94).

On May 21, 2015, the ALJ issued her decision, finding, based on the five-step sequential evaluation process set forth in the Code of Federal Regulations,[6] Bell was not disabled. At step one, the ALJ determined Bell had not engaged in substantial gainful activity since her application date. At step two, the ALJ found Bell had the following "severe impairments": "fibromyalgia, obesity, polysubstance dependence, depression, anxiety, and . . . PTSD." (See id. 41.) At step three, the ALJ determined Bell did not have an impairment or combination of impairments that meets or equals a listed impairment. In so determining, the ALJ found Bell had "mild restriction" in "activities of daily living" and "moderate difficulties" in "social functioning" and "concentration, persistence, or pace." (See id. 42.)

Before continuing to step four, the ALJ determined Bell's "residual functional capacity" ("RFC")[7] and, in that regard, found Bell could "perform light work as defined in

---

office manager, which are classified, respectively, as "semi-skilled" and "skilled" work. (See CAR 49.)

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 416.968(a) (effective Oct. 29, 2008).

[6] "The ALJ performs a 'sequential evaluation process' which ends when the ALJ finds that the claimant is or is not disabled. 20 C.F.R. § 416.920(a)(4). At the first step, a claimant 'doing substantial gainful [work] activity' is not disabled. Id. § 416.920(a)(4)(i). At the second step, a claimant is not disabled unless she has a 'medically determinable physical or mental impairment' or combination of impairments that is severe and either lasts at least a year or results in death. Id. § 416.920(a)(4)(ii). At the third step, a claimant is disabled if the severity of her impairments meets or equals one of various impairments listed by the Commissioner, 20 C.F.R. pt. 404, subpt. P, app. 1. Id. § 416.920(a)(4)(iii). At the fourth step, a claimant is not disabled if her residual functional capacity ('RFC') allows her to perform her past relevant work. Id. § 416.920(a)(4)(iv). At the fifth and final step, a claimant is disabled if she cannot make an adjustment to other work that 'exists in significant numbers in the national economy,' id. § [416.920(c)(2)], given her RFC, age, education, and work experience, id. § 416.920(a)(4)(v)." Gardner v. Berryhill, 856 F.3d 652, 654 n.1 (9th Cir. 2017).

[7] RFC is "the most [the claimant] can still do despite [her] limitations." See 20 C.F.R. § 416.945(a)(1) (effective Aug. 24, 2012); see also SSR 96-8p, 1996 WL 374184, at *1 (explaining "[o]rdinarily, RFC is an assessment of an individual's ability to do

United States District Court
Northern District of California

20 CFR [§] 416.967(b)," with certain limitations, namely, that Bell "needs to use a cane to perform prolonged walking," "can perform occasional postural activities," "cannot work at heights or with heavy or hazardous machinery," and "is limited to simple, routine tasks with a maximum specific vocational preparation (SVP) 2[8] with no regula[r] interaction with the general public, no tandem teamwork with coworkers," and only "occasional interaction with supervisors."  (See id. 44.)  In so finding, the ALJ relied on the opinions of a number of health care professionals; additionally, the ALJ determined Bell to be "not entirely credible" as to the severity and limiting effects of her symptoms.  (See id. 45.)[9]

With respect to physical limitations, the ALJ primarily relied on the opinion of consultative examiner Calvin Pon, M.D. ("Dr. Pon"), a physician who conducted an "internal medicine disability examination" of Bell.  (See id. 1082.)  In a report dated July 30, 2013, Dr. Pon, with respect to Bell's functional capacity, found Bell able to: (1) "stand and/or walk with her cane for a total of six hours during an eight hour work day" (see id. 1085); (2) "sit for a total of six hours during an eight hour work day" (see id.); (3) "[w]ith the support of her cane . . . perform crouching, kneeling and squatting occasionally" (see id.); (4) "perform pushing and pulling, bilateral arm/hand controls and pushing, bilateral leg/foot controls on a frequent basis" (see id.); and (5) "lift and carry 10 pounds frequently and 10 [sic] pounds occasionally" (see id.).  Additionally, the ALJ relied on the opinions of two non-examining consultants, A. Pan, M.D. ("Dr. Pan"), and A. Dipsia, M.D. ("Dr. Dipsia"), both of whom reviewed Bell's medical records.  On August 14, 2013, Dr. Pan concluded Bell's allegations were "not fully credible or substantiated by medical

---

sustained work-related physical and mental activities in a work setting on a regular and continuing basis," i.e., "8 hours a day, for 5 days a week, or an equivalent work schedule").

[8] As noted above, the ALJ found Bell was restricted to "unskilled" work.  Unskilled work "corresponds to an SVP of 1–2."  See SSR 00-4p, 2000 WL 1898704, at *3.

[9] The ALJ also considered, as to Bell's physical and mental limitations, the opinion of Bell's grandmother, V. Pauline Bell.  Bell does not challenge the ALJ's rejection of said opinion, and, consequently, the Court does not address it further herein.

4

evidence" (see id. 105) and that she could perform "light" work (see id. 105; see also id. 108–10); subsequently, on March 11, 2014, Dr. Dipsia "affirmed" Dr. Pan's RFC assessment (see id. 127). The ALJ gave all three consultants' opinions "great weight." (See id. 46–47.)[10]

With respect to mental limitations, the ALJ primarily relied on the opinion of consultative examiner Janine Marinos, Ph.D. ("Dr. Marinos"), a psychologist who conducted a "mental status examination" of Bell (see id. 1078). In a report dated July 30, 2013, Dr. Marinos, with respect to Bell's functional capacity, found Bell "appears able to understand and carry out simple instructions, but would likely have at least moderate difficulty at this time maintaining concentration over the course of a normal work day and coping with stress in a job setting." (See id. 1080.) Additionally, the ALJ relied on the opinion of two non-examining consultants, F. Mateus, M.D. ("Dr. Mateus") and A. Franco, Psy.D. ("Dr. Franco"), both of whom reviewed Bell's medical records. On August 19, 2013, Dr. Mateus concluded Bell "should be able to sustain at least simple tasks" (see id. 107; see also id. 110–11); subsequently, on March 19, 2014, Dr. Franco "adopt[ed]" Dr. Mateus's determination (see id. 127). The ALJ gave these three consultants' opinions "great weight." (See id. 47–48.)

The ALJ considered, but did not accept, two opinions offered by Rutman as to Bell's mental limitations. In a June 18, 2013, report, Rutman, citing Bell's difficulties with interpersonal skills, conflicts with others, and ability to focus, opined that Bell's "current mental status indicates that she is clearly unable to function in a work environment" (see id. 1063); Rutman further noted that Bell's "mental health symptoms become much more evident after periods of abstinence [from drugs]" (see id.). Subsequently, in a January 28, 2014 report, Rutman similarly opined that Bell "is incapable of performing work-

_____

[10] The ALJ also considered two reports by Rose Rutman, MFT ("Rutman"), a licensed marriage and family therapist, who offered opinions as to Bell's physical and mental limitations. Bell does not challenge the ALJ's rejection of Rutman's opinions as to her physical limitations, and, consequently, the Court does not address further herein those aspects of her opinions.

related activities." (See id. 1093.) The ALJ gave these opinions "little weight." (See id. 47.)

The ALJ also considered, and gave "some weight" to, the opinion of Sara Glozer,[11] MFT ("Glozer") (see id. 48), a licensed marriage and family therapist, who found Bell has: (1) "moderate" limitations with respect to "simple" instructions and work-related decisions (see id. 1400); (2) "marked" limitations with respect to "complex" instructions, "complex" work-related decisions, and interaction with the public and supervisors (see id. 1400–01); and (3) "extreme" limitations in responding to "usual work situations and to changes in a routine work setting" (see id. 1401).[12]

Proceeding to step four, the ALJ, relying on testimony provided by the VE, found Bell "is unable to perform any past relevant work." (See id. 48.) Lastly, at step five, the ALJ, again relying on the VE's testimony, found that, in light of Bell's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Bell] can perform" (see id. 49), specifically, the "light work" jobs of "basket filler," "collator operator," and "photocopy machine operator" (see id. 50). Based thereon, the ALJ denied Bell's application at the fifth step.

Subsequently, Bell requested the Appeals Council ("AC") review the ALJ's decision and submitted new evidence, including: (1) an opinion and treatment records from Theresa Rizzo, Psy.D. ("Dr. Rizzo"), Bell's psychologist, opining that her "symptoms and inability to work have been present in excess of one year and show no current signs of abating in the near future" (see id. 1444); and (2) two opinions from Michael Edward Mason, M.D. ("Dr. Mason"), Bell's primary care physician, placing her "on modified

---

[11] The ALJ and both parties refer to this provider as "Sara Glazer." (See, e.g. CAR 47 (ALJ decision); Pl.'s Mot. for Summary Judgment ("Pl.'s MSJ") at 6:17; Def.'s Cross-Mot. for Summary Judgment ("Def.'s MSJ") at 8:23.) The record submitted by said provider, however, shows the spelling as set forth above. (See, e.g., CAR 1402.)

[12] The ALJ also considered Bell's "GAF [Global Assessment of Functioning] scores," assigning such scores "minimal probative value." (See CAR 48.) Bell does not challenge the ALJ's discounting of her GAF scores, and, consequently, the Court does not address those scores further herein.

activity at work and at home" (see id. 1453–54).  On December 22, 2015, the AC denied review, explaining that it had considered both "the reasons [Bell] disagree[d] with the [ALJ's] decision" and "the additional evidence" (see id. 2) and that "this information does not provide a basis for changing the [ALJ's] decision" (see id.).

On February 8, 2016, Bell filed the instant petition for review.

## STANDARD OF REVIEW

"An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  The reviewing court must consider "the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion," see id., and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," see id. at 1039–40.  Where the AC "considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (internal quotation, citation, and alterations omitted).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and . . . resolving ambiguities." Andrews, 53 F.3d at 1039.  Where the claimant "has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering, [the court] review[s] the ALJ's rejection of her testimony for specific, clear and convincing reasons." Burrell, 775 F.3d at 1136 (internal quotation and citation omitted); see also Garrison, 759 F.3d at 1015 (noting such standard "is not an easy requirement to meet"; explaining "[t]he clear and convincing standard is the most demanding required in Social Security cases") (internal quotation

and citation omitted)). In addition, where "other doctors' opinions contradict[] the opinion of [the claimant's treating physician]," the court "review[s] the ALJ's rejection of [the treating physician's] opinion for specific and legitimate reasons that are supported by substantial evidence." See Burrell, 775 F.3d at 1137 (internal quotation and citation omitted). The court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." See Garrison, 759 F.3d at 1010.

"Even when the ALJ commits legal error," however, the reviewing court is to "uphold the decision where that error is harmless." See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation, citation, and alteration omitted). "An error is harmless only if it is inconsequential to the ultimate nondisability determination" or, where the error is based on a lack of specificity, if "the agency's path may reasonably be discerned." See id. at 494 (internal quotation and citation omitted).

**DISCUSSION**

In her motion for summary judgment, Bell contends the ALJ's RFC finding "is not supported by substantial evidence or based on correct legal standards" (see Pl.'s MSJ at 10:9) and thus that the ALJ erred at step five in finding her not disabled. Specifically, Bell argues: (1) the ALJ improperly discredited her allegations regarding her symptoms; (2) the ALJ and/or AC improperly rejected the opinions of six physicians and psychologists; (3) the ALJ improperly rejected the opinions of two therapists; and, (4) as a result of the foregoing errors, the ALJ's RFC finding failed to incorporate all of her limitations. Moreover, Bell argues, "when the improperly rejected evidence is credited, [she] should be found disabled" (id. at 25:17–18), and thus an order remanding her case "for the immediate award of benefits" is appropriate (see id. at 25:21). In making the above-referenced arguments, Bell emphasizes that "she cannot perform the mental and physical demands of light work or sedentary work on a regular and continuous basis" (see id. at 15:11–12), namely, as noted above, "8 hours a day, for 5 days a week, or an equivalent

work schedule," <u>see</u> SSR 96-8p,[13] 1996 WL 374184, at *1.

The Court addresses each of Bell's arguments in turn.

## A.    Bell's Credibility

Bell argues the ALJ improperly rejected her allegations about her symptoms because the ALJ failed to make "specific, clear, and convincing findings" to support her credibility determination.  (<u>See</u> Pl.'s MSJ at 11:11.)  In particular, Bell contends the ALJ failed to "explain how her interpretation of the medical evidence detracted from [] Bell's credibility" (<u>see</u> <u>id.</u> at 11:17–18) and failed to "provide any indication of what symptom testimony was believed to be not credible" (<u>see</u> <u>id.</u> at 11:21–22).

The Commissioner responds that the ALJ properly rejected "the severity of [Bell's] . . . subjective symptoms" by "citing [her] admitted activities of daily living and medical evidence of record."  (<u>See</u> Def.'s MSJ at 4:3–5.)

### 1.    Bell's Allegations and the ALJ's Decision

As noted above, Bell described her activities and symptoms in two Function Reports and at the hearing before the ALJ.  In those reports, Bell stated her physical and mental conditions affected her ability to, <u>inter alia</u>, sit, stand, walk, lift, remember, complete tasks, concentrate, and understand.  For example, she reported "chronic pain [and] fatigue" (<u>see</u> CAR 312), a need for "frequent breaks" (<u>see</u> <u>id.</u>), a need to stretch after sitting for 20 minutes, an inability to stand "very long" (<u>see</u> <u>id.</u>), a need to rest for 10–20 minutes after walking one block, and an inability to lift more than 10 pounds.

At the hearing, Bell testified that, after the October 2010 onset of her disability, she experienced "at least six months of total exhaustion and extreme pain on a daily basis" (<u>see</u> <u>id.</u> 66), "wasn't able to keep up with the house" (<u>see</u> <u>id.</u> 64), "wasn't able to manage [her caregiver job] much" (<u>see</u> <u>id.</u>), and started failing her classes at College of Marin. Nevertheless, she confirmed she was independent in activities such as dressing, feeding,

---

[13] "Social Security Rulings . . . are binding on all components of the Social Security Administration."  20 C.F.R. § 402.35(b)(1) (effective Jul. 3, 2007).

bathing, and laundry; stated that, while at a shelter prior to entering the rehabilitation facility, she "went to a lot of NA [Narcotics Anonymous] meetings," "did a little volunteer work . . . giving people directions," and went "to St. Vincent's to eat" (see id. 81); and further stated that, with medication, her pain was "mainly . . . under control" (see id. 76). Additionally, she testified that she used local transit in Marin and San Francisco including Paratransit, cabs, and the Muni; took the bus and train every other week to visit her younger son in Stockton; and had weekly visits at the facility with her older son.

Asked what kept her "from working regularly . . . the last two years," Bell testified, "[i]t's really difficult for me to be able to move around, like, an office. It's difficult for me to sit for long periods of time . . . . I tire very easily. If I have to be at a jobsite for more than three or four hours, I need time to be able to rest. And that means lying down and taking a nap . . . [.] I really need to lay down and rest." (See id. 67–68.) Asked if she had tried going back to work, she stated, "[j]ust . . . going out and running errands [is] really rough" and the rehabilitation facility schedule "[is] really wearing" (see id. 68).

In describing her schedule, Bell testified that: (1) at the facility, in the morning, she got up between 6:15 and 6:30, made her bed, got dressed, and had to be out of her room by 7:00; ate a prepared breakfast and waited in line for medication; packed her backpack and got her cane; attended a morning meeting; and took a bus "to re-entry" (see id. 69); (2) at re-entry, she had a half-hour meeting starting at 9:00, did two hours of "work at the computer lab and resources center to find housing or work or volunteer opportunities," and then returned to the facility by bus (see id.); (3) at the facility, in the afternoon, she ate lunch, "usually" took a nap "for a couple of hours," and "might do some chores" or "socialize" (see id.); and (4) at the facility, in the evening, she had dinner, had to do a chore for the facility, had a half-hour meeting at 6:00, "might" thereafter shower, read, or relax, had a "med call" at 7:00, and then "usually" went to bed (see id. 70).

In addition, Bell testified to two other types of work she did at the facility: (1) on her Tuesdays off from re-entry, she "often" took "a different job," such as a "janitorial job . . . that I can kind of do at my leisure" (see id. 71); and (2) once or twice a week, she had a

three- or four-hour shift in which she "monitor[ed] the gate" at the facility (see id. 86; see also id. 89).  As to the monitoring job, she testified night shifts were "really boring," but day shifts were "really, really draining" and she "usually" laid down to rest afterwards because she felt both physically and mentally exhausted.  (See id. 89.)  She also testified that, due to exhaustion and/or anxiety, "by Friday it's a struggle, whether I can . . . make that last day or not" (see id. 70) and that she had missed things such as re-entry and meetings "probably seven or eight times" since she entered the facility (see id. 72).

In assessing Bell's credibility, the ALJ found Bell's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible for the reasons explained in [the] decision."  (See id. 45.)  In that regard, the ALJ noted Bell's allegations as to "difficulties walking, standing, sitting, and lifting" (see id.); found "[n]othing in the records from [Bell's] treating physicians suggest a limitation on [Bell's] ability to perform light work with the limitations" specified in her RFC finding (see id.); summarized the opinions of a number of consultative examiners, non-examining consultants, and other sources; and concluded that, while Bell was, "generally, credible in her allegations, . . . the functional limitations to the extent that they are alleged . . . [are] unpersuasive in light of the disproportionate objective medical evidence" (see id. 48). Additionally, the ALJ noted, Bell "maintains a busy schedule daily consisting of a wide spectrum of activities both inside and outside of the home that she appears to be managing fairly well and is independent in her travel and personal care."  (See id.)

## 2.    Analysis

As noted, the ALJ found Bell has multiple "severe impairments" (see CAR 41) including fibromyalgia, depression, anxiety, and PTSD; there is nothing in the ALJ's decision to suggest, nor does the Commissioner argue, there is evidence of malingering. Under such circumstances, the Court reviews the ALJ's rejection of Bell's testimony and written reports for "specific, clear and convincing reasons."  See Burrell, 775 F.3d at 1136

(internal quotation and citation omitted).[14]

In that regard, "although an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion." See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." See Brown-Hunter, 806 F.3d at 493 (internal quotation and citation omitted). Further, the reviewing court "may not take a general finding . . . and comb the administrative record to find specific conflicts." See id. at 494 (internal quotation and citation omitted).

As Bell points out, the ALJ did not identify the specific statements she found not credible, nor did the ALJ identify the evidence that undermined any such statement. Rather, after summarizing the evidence from Bell and various medical sources, the ALJ concluded her assessment of Bell's credibility with the general, and consequently inadequate, comment that Bell's alleged functional limitations were "unpersuasive in light of the disproportionate objective medical evidence." (See CAR 48); see Brown-Hunter, 806 F.3d at 493–94 (finding "legal error" where ALJ failed to "identify specifically" discredited statements or to "link that testimony to the particular parts of the record supporting her non-credibility determination"; explaining, "a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible") (emphasis omitted)). Moreover, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain" or fatigue. See Bunnell, 947 F.2d at 345; see also 20 C.F.R. § 416.929(c)(3) (effective Jun. 13, 2011–Mar. 26, 2017) (recognizing "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone").

---

[14] While the Commissioner disputes the correctness of the "clear and convincing reasons" standard, she concedes the standard "is part of this Circuit's law and district courts are bound to follow Circuit precedent." (See Def.'s MSJ at 3 n.2.)

1    Next, the ALJ's reference to Bell's activities, including her ability to travel and

2    handle her personal care, is too general to support the ALJ's credibility determination.

3    The Ninth Circuit has acknowledged "two grounds for using daily activities to form the

4    basis of an adverse credibility determination": (1) where the claimant's activities

5    "contradict his other testimony"; and (2) where such activities "meet the threshold for

6    transferable work skills."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  Here, the

7    ALJ did not identify a conflict between Bell's alleged symptoms and the activities Bell

8    described, see Burrell, 775 F.3d at 1138 (finding error where ALJ "did not elaborate on

9    which daily activities conflicted with which part of [c]laimant's testimony") (emphasis in

10   original), or explain how Bell's activities were transferable to a work setting, see Orn, 495

11   F.3d at 639; see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (holding "many

12   home activities are not easily transferable to what may be the more grueling environment

13   of the workplace, where it might be impossible to periodically rest or take medication").

14   Additionally, the ALJ does not appear to have considered certain relevant aspects of

15   Bell's testimony and reports, such as the part-time nature of her re-entry schedule (see

16   CAR 68–71) (stating participants attend re-entry programming in the morning and have

17   Tuesdays off) and her need to take breaks, rest, and nap (see, e.g., id. 67–68, 276, 312,

18   314); see also Garrison, 759 F.3d at 1016 (finding ALJ "mischaracterized" claimant's

19   testimony regarding daily activities where claimant testified to need to rest and nap after

20   various activities).

21   In sum, the Court finds the ALJ erred by failing to adequately explain her reasons

22   for rejecting Bell's allegations as to her symptoms.  The above-referenced errors were not

23   harmless, as Bell's allegations were critical to the ALJ's disability determination, and the

24   Court cannot discern from the ALJ's decision the ALJ's specific reasons for rejecting

25   them.  See Brown-Hunter, 806 F.3d at 494 (finding error not harmless where ALJ "made

26   only a general credibility finding without providing any reviewable reasons why she found

27   [claimant's] testimony to be not credible").

28   ///

**B.    Physicians' and Psychologists' Opinions**

Bell argues the ALJ and/or AC improperly rejected the medical opinions of six providers, specifically, the opinion of Christina Goette, M.D. ("Dr. Goette"), a treating physician, as well as the opinions of Dr. Mason, Dr. Marinos, Dr. Pon, Dr. Rizzo, and Dr. Dipsia.

Under the applicable regulations, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 C.F.R. § 416.927(a)(2) (effective Aug. 24, 2012–Mar. 26, 2017).  The SSA "evaluate[s] every medical opinion [it] receive[s]."  See id. § 416.927(c).

Reviewing courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non[-]examining physicians)."  Garrison, 759 F.3d at 1012 (internal quotation and citation omitted).  In general, "the opinion of a treating physician is . . . entitled to greater weight than that of an examining physician," see id., and "the opinion of an examining physician is entitled to greater weight than that of a non-examining physician," see id.

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  See id. (internal quotation and citation omitted).  "The opinion of a non[-]examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996) (emphasis omitted).  "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."  See

14

Garrison, 759 F.3d at 1012.

The Court next turns to the medical opinions at issue.

### 1.    Dr. Goette

On August 30, 2013, Dr. Goette, who was then Bell's primary care physician, placed Bell "on modified activity at work and at home" for a four-month period, from August 30 through December 30, 2013, limiting her to standing, walking, and sitting "[i]ntermittently (up to 50% of shift)" and to working "no more than 4 hour(s) per workday." (See CAR 1352.)  The ALJ did not mention Dr. Goette's opinion in her decision.

As Bell contends, the ALJ erred by not addressing Dr. Goette's opinion.  See Hill v. Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) (holding ALJ erred by not addressing medical opinion); see also SSR 96-2p, 1996 WL 374188, at *5 (providing notice of decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").[15]

Further, such error is not harmless.  First, Dr. Goette's opinion, which limited both Bell's hours and the amount of time she could stand, walk, and sit, conflicted with or at least could raise a question as to the opinions of examining and non-examining physicians, namely, Dr. Pon, Dr. Pan, and Dr. Dipsia, upon whom the ALJ relied in determining Bell's RFC.[16]  (See CAR 1085 (Pon report) (opining Bell "should be able to stand and/or walk with her cane for a total of six hours during an eight hour work day . . . [and] sit for a total of six hours during an eight hour work day"); id. 105, 108 (Pan's initial

---

[15] After the SSA's adjudication of Bell's claim was complete, certain SSRs discussed herein, namely SSR 96-2 and SSR 06-3, were rescinded.  See Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01, 15263 (Mar. 27, 2017) (providing rescission of covered rulings "will be effective for claims filed on or after March 27, 2017").

[16] The four opinions were not issued at precisely the same time.  Dr. Goette and Dr. Pan issued their opinions in August 2013; Dr. Pon's opinion was issued in July 2013, and Dr. Dipsia's was issued in March 2014.

RFC assessment) (proposing "light" work and giving the same opinion as Dr. Pon regarding Bell's ability to stand, walk, and sit); id. 127 (record of Dipsia opinion) (affirming "initial RFC").)  Moreover, the ALJ, in finding Bell could perform light work, relied on those non-treating physicians' opinions, assigning "great weight" to each (see id. 46–47), even though such opinions generally are entitled to less weight than those of treating physicians, see Garrison, 759 F.3d at 1012.  While the Commissioner now advances various grounds on which Dr. Goette's opinion could be rejected, the ALJ did not assert them, and, consequently, the Court has not considered those reasons in evaluating the ALJ's decision.  See id. at 1010.

### 2.    Dr. Mason

Dr. Mason, who became Bell's primary care physician after Dr. Goette, twice placed Bell "on modified activity at work and at home," first for a three-month period, from January 16, 2015, through April 16, 2015, when he limited her to standing and walking "[i]ntermittently (up to 50% of shift)" (see CAR 1453), and subsequently for a six-month period, from September 4, 2015 through March 4, 2016, when he limited her to working "no more than 4 hour(s) per workday" and added "[p]lease work less than 20 hours per week" (see id. 1454).

As noted above, neither of Dr. Mason's opinions was available for consideration by the ALJ.  Rather, Bell first submitted them to the AC, which stated it had considered both "the reasons [Bell] disagree[d] with the [ALJ's] decision" and "the additional evidence," including Dr. Mason's opinions (see id. 2), and, without further elaboration, concluded "this information does not provide a basis for changing" the ALJ's decision (see id.)

Where the AC considers new evidence in reviewing a case, the Court, as noted, must consider that evidence as well.  See Burrell, 775 F.3d at 1136.  Here, Dr. Mason's opinions, like that of Dr. Goette, conflicted with or at least could call into question not only the opinions of the examining and non-examining physicians, but, given the ALJ's reliance on those opinions, the ALJ's finding as to Bell's RFC as well.  As described above, however, the AC provided no explanation for its rejection of Dr. Mason's opinions,

16

nor is there anything in the ALJ's decision that can be construed as addressing in advance the limitations Dr. Mason identified, and the Court does not review reasons for rejection asserted solely by the Commissioner. See Garrison, 759 F.3d at 1010.

Under such circumstances, the Court finds the AC erred. See Ramirez v. Shalala, 8 F.3d 1449, 1453–54 (9th Cir. 1993) (holding AC erred where it did not give specific, legitimate reason for disregarding treating doctor's opinion). The Court further finds such error was not harmless, as Dr. Mason's opinions addressed the critical question of Bell's ability to work. See Gardner, 856 F.3d at 657, 659 (finding treating physician's final report, submitted to AC after ALJ's decision, would, "if credited, . . . have undermined the ALJ's original finding that [claimant] was not disabled"; further holding ALJ "may well have credited" treating doctor's assessment over examining and non-examining doctors' assessments).

### 3. Dr. Marinos

After conducting a "Complete Mental Status Evaluation" of Bell (see CAR 1078), Dr. Marinos, who, as noted, is a psychologist who performed a consultative examination of Bell, provided a "Medical Source Statement/Functional Assessment" (see id. 1080), in which she found Bell "would likely have at least moderate difficulty at this time maintaining concentration over the course of a normal work day and coping with stress in a job setting" (see id.).

Bell argues the ALJ "did not include" the above limitations in her RFC finding (see Pl.'s MSJ at 18:21), that such finding "conflicted" with Dr. Marinos's opinion (see id. at 18:25), and that the ALJ thus erred by not giving reasons for rejecting Dr. Marinos's opinion. The Commissioner does not dispute Bell's contention that a conflict exists but, rather, argues there is no error because the ALJ "need not agree with everything" in a medical opinion. (See Def.'s MSJ at 6:22.)

At the outset, the Court notes that, although, as the parties point out, the ALJ's RFC finding did not expressly incorporate the above-referenced limitations, other portions of her decision suggest she may in fact have considered and accepted them. In

1    particular, in the course of her supporting analysis, the ALJ did set forth the limitations Dr.

2    Marinos identified with regard to concentration and stress, gave Dr. Marinos's opinion

3    "great weight" (see CAR 47), and ultimately, in finding an RFC of "light work, with

4    additional postural, environmental, and mental limitations," stated, "[t]he mental

5    limitations accommodate [Bell's] limitations stemming from her depression, anxiety, and

6    PTSD" (see id. 48).  In addition, earlier, in the course of her step 3 analysis, the ALJ

7    found Bell has "moderate difficulties in maintaining concentration, persistence, or pace"

8    (see id. 42).  Nevertheless, as the ALJ did not clearly incorporate, either in her RFC

9    finding or the hypothetical she gave to the VE, the limitations specified by Dr. Marinos,

10   there is no indication the VE considered them in identifying the jobs Bell could perform.

11          Accordingly, the Court finds the ALJ erred in not adequately including the

12   limitations Dr. Marinos identified, and that such error was not harmless.

13          **4.    Dr. Pon**

14          As noted, Dr. Pon is a physician who performed a consultative examination of Bell.

15   Bell argues the ALJ erred because she did not include in her RFC finding three limitations

16   specified by Dr. Pon and did not give any reasons for rejecting them.  In particular, Bell

17   contends, the ALJ failed to incorporate limitations related to: (1) her ability to lift and

18   carry; (2) her use of a cane; and (3) her ability to push, pull, and use bilateral arm/hand

19   and leg/foot controls.

20          As to Bell's ability to lift and carry, Dr. Pon, as noted above, found Bell "should . . .

21   be able to lift and carry 10 pounds frequently and 10 [sic] pounds occasionally."  (See

22   CAR 1085.)  While the ALJ mentioned such limitation in summarizing Dr. Pon's opinion,

23   she did not include it in her RFC finding that Bell could perform light work or in the

24   hypothetical she provided to the VE.  As Bell points out, the "light work" category includes

25   lifting up to 20 pounds.  Consequently, the Court agrees the ALJ erred and that such

26   error was not harmless.  (See Pl.'s MSJ at 19:9–14); see also Smolen v. Chater, 80 F.3d

27   1273, 1286 (9th Cir. 1996) (holding ALJ erred in discussing only one portion of

28   physician's opinions; finding ALJ "effectively rejected" undiscussed opinions "[b]y

18

disregarding [them] and making contrary findings").

As to Bell's use of a cane, Dr. Pon found "a cane is medically indicated," that Bell "should be able to stand and/or walk with her cane," and that, "[w]ith the support of her cane[,] [Bell] is able to perform crouching, kneeling and squatting occasionally." (See CAR 1085.) The ALJ, in her RFC finding, stated Bell "needs to use a cane to perform prolonged walking; she can perform occasional postural activities." (See id. 44.)[17] With respect to standing, the ALJ erred because she did not include in her RFC finding use of a cane for standing or explain why she rejected such restriction, see Garrison, 759 F.3d at 1012, and, as the VE did not consider it in identifying jobs Bell could perform, the error was not harmless. With respect to walking, the ALJ also erred, as she did not explain why she limited Bell's need for a cane to situations of "prolonged" walking; in this instance, however, the error was harmless, because the hypothetical the ALJ posed to the VE, and on which the VE relied in identifying suitable jobs, specified an individual who needs a cane "in terms of walking" (see CAR 92), and the ALJ in turn relied on the VE's identification of jobs in finding Bell could perform other work. With respect to postural activities, the Court reads the RFC finding to cover use of a cane for such activities and thus finds the ALJ did not err, particularly given the hypothetical the ALJ posed to the VE, which specified an individual who needs a cane "for performing occasional postural maneuvers" (see id.), and, as noted, the ALJ relied on the VE's identification of jobs in finding Bell could perform other work. To the extent the ALJ's RFC finding arguably can be read to have omitted that restriction, any such error was, for the same reasons, harmless.

Lastly, as to pushing, pulling, and bilateral controls, Dr. Pon found Bell "should . . . be able to perform pushing and pulling, bilateral arm/hand controls and pushing, bilateral leg/foot controls on a frequent basis." (See id. 1085.) Although the ALJ's RFC finding

---

[17] Crouching, kneeling, and squatting are postural activities. See, e.g., SSR 96-9p, 1996 WL 374185, at *7 (listing crouching and kneeling as examples of postural activities).

did not specifically limit Bell to "frequent" pushing, pulling, and the use of bilateral arm/hand or leg/foot controls, the "light work" category, as noted above, includes jobs that require "some pushing and pulling of arm or leg controls."  See 20 C.F.R. § 416.967(b).  Thus, to the extent the ALJ's RFC finding erroneously omitted the above-referenced restrictions pertaining to frequency, any error was harmless.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (finding omission of limitations harmless where category of jobs ALJ identified required lower level of activity than that dictated by limitation).

### 5.    Dr. Rizzo

Bell argues "a finding of disability is warranted" on the basis of Dr. Rizzo's opinion as to her limitations.  (See Pl.'s MSJ at 21:9.)  The Commissioner responds that such opinion was "completed" after the ALJ's decision.  (See Def.'s MSJ at 7:16.)

In a form titled "Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment" (see CAR 1439–43) and dated October 30, 2015, Dr. Rizzo, Bell's treating psychologist, identified various issues that could preclude Bell's ability "to perform sustained work on a regular and continuing basis" (see id. 1439; see also id. 1442).  In particular, she found Bell had "a substantial loss"[18] in her ability to: (1) "understand, remember, and carry out simple instructions" (see id. 1442); (2) "make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions" (see id.); and (3) "deal with changes in a routine work setting" (see id.), the last of which she also rated as "moderately severe" (see id. 1441).[19]  In addition, Dr. Rizzo anticipated Bell's "impairments or treatment" would cause her to be absent from

---

[18] The form provides the following SSA definition of "substantial loss": "[i]n practical terms, an individual has a substantial loss of ability to perform a basic mental activity when he or she cannot perform the particular activity in regular, competitive employment but, at best, could do so only in a sheltered work setting where special considerations and attention are provided."  (See CAR 1442.)

[19] The form provides the following definition of "moderately severe": "A limitation which . . . precludes the [individual's] ability to perform the designated activity on a regular and sustained basis."  (See CAR 1439 (emphasis omitted).)

United States District Court
Northern District of California

work "[a]bout four days per month." (See id.)[20]  She further opined that Bell's limitations

had existed "at the assessed severity" since July 18, 2014, and that such limitations had

lasted or could be expected to last "12 continuous months." (See id. 1442.)

On October 30, 2015, Dr. Rizzo also wrote a letter explaining that she had been

seeing Bell weekly since July 23, 2015, and opining that "the chronic stress from living

with [Bell's] illnesses will be ongoing and[,] therefore, seriously limit her ability to maintain

a full-time work schedule at this time." (See id. 1444.)  In Dr. Rizzo's opinion, Bell's

"symptoms and inability to work ha[d] been present in excess of one year and show[ed]

no current signs of abating in the near future." (See id.)  With her letter, Dr. Rizzo

included a 7-page assessment, dated July 23, 2015, diagnosing Bell with PTSD and

"mood disorder in partial remission." (See id. 1451.)

As with Dr. Mason's opinions, Dr. Rizzo's opinion was submitted only to the AC,

which stated it had considered such opinion but which did not provide a specific reason

for rejecting it.  The Court finds the AC's failure to explain its reasons for rejecting Dr.

Rizzo's opinion constituted error and that such failure was not harmless.  Notably, Dr.

Rizzo's assessment of Bell's limitations, if credited, could be dispositive, as she identified

several problems that would render Bell unable to work on a sustained basis, and the

opinion of a treating doctor is generally entitled to more weight than the opinions of the

examining and non-examining doctors upon which the ALJ relied.  See Garrison, 759

F.3d at 1012.

### 6.    Dr. Dipsia

Bell contends the ALJ erred by failing to mention or give any reason for rejecting

Dr. Dipsia's opinion that she was "limited to simple 1–2 step tasks." (See Pl.'s MSJ at

21:10 (quoting CAR 137).)  The Court agrees.

Dr. Dipsia, as noted, is a non-examining physician.  Pursuant to regulation, an ALJ

---

[20] As noted above, the VE testified that absences of two days per month would not be considered full-time competitive employment. (See CAR 96.)

"must consider [the] findings and other opinions" of non-examining physicians, see 20 C.F.R. § 416.927(e)(2)(i), and "must explain . . . the weight given" to such opinions, see id. § 416.927(e)(2)(ii).  Here, although the ALJ stated she gave Dr. Dipsia's opinion "great weight" (see CAR 47), nowhere in her decision did she mention the above-referenced limitation.

As the Commissioner points out, however, "at least one of the . . . illustrative occupations" identified by the VE "comports with such a limitation" (see Def.'s MSJ at 8:15 & n.5),[21] and Bell acknowledges the ALJ's citation to such occupation and that it comports with the above limitation (see CAR 50 (identifying one job, "basket filler," with an SVP level of 1)).

Accordingly, the Court finds the ALJ's failure to include the 1–2 step limitation constituted harmless error.

## C.    Therapists' Opinions

Bell argues that, in evaluating the mental opinion evidence, the ALJ "improperly rejected" the opinions of Rutman and Glozer.  (See Pl.'s MSJ at 21:22.)

As marriage and family therapists, Rutman and Glozer qualify as "medical sources" subject to a regulation governing "other sources."  See 20 C.F.R. § 416.913(d)(1) (effective Sept. 3, 2013–Mar. 26, 2017) (defining "other sources" to include "medical sources not listed in paragraph (a) of this section[22] (for example, . . . therapists)"); see also id. § 416.902 (effective Jun. 13, 2011–Mar. 26, 2017) (defining "medical sources" as "acceptable medical sources[] or other health care providers who are not acceptable medical sources").[23]

---

[21] To the extent the Commissioner also contends such limitation constitutes a "non-physician employee's synthesis of the vocational information in the case file" (see Def.'s MSJ at 8:6–7) and not Dr. Dipsia's opinion, the Court is not persuaded.

[22] Paragraph (a) of 20 C.F.R. § 416.913 pertains to "acceptable medical sources."

[23] Rutman and Glozer do not qualify as "acceptable medical sources," which category is limited, in relevant part, to "[l]icensed or certified psychologists."  See 20 C.F.R. § 416.913(a)(2).

United States District Court
Northern District of California

An ALJ "may . . . use evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." Id. § 416.913(d). The ALJ "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-3p, 2006 WL 2329939, at *3, *6 (explaining, opinions from "medical sources[] who are not technically deemed 'acceptable medical sources' . . . are important and should be evaluated on key issues such as impairment severity and functional effects"). "The ALJ may discount testimony from . . . 'other sources' if the ALJ gives reasons germane to each witness for doing so." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotation and citation omitted).

The Court next turns to a discussion of each therapist's opinion.

### 1.     Rutman

In a June 18, 2013, report, Rutman, as noted, opined that Bell's "current mental status indicates that she is clearly unable to function in a work environment" and explained that Bell's "interpersonal skills . . . rapidly deteriorate," her "ability to focus on any one subject is very unreliable," she "frequently reports challenging authorities and leaving situations due to conflicts with others," and her "mental health symptoms become much more evident after periods of abstinence [from drugs]." (See CAR 1063.) Subsequently, in a January 28, 2014 report, Rutman similarly opined that Bell "is incapable of performing work-related activities due to 1) her inability to get along with others, 2) her emotional volatility, 3) her inability to focus and concentrate for extended periods of time, [and] 4) her unreliability in terms of schedule and follow-through." (See id. 1093.)

The ALJ gave Rutman's opinions "little weight, as she is not an acceptable medical source" (see id. 47), and also found her opinions were "not supported by detailed treatment or examination notes" (see id.). Bell challenges both such bases for rejecting

23

Rutman's opinions as to her mental health.

First, the mere fact that Rutman does not qualify as an "acceptable medical source" does not suffice as a basis for rejecting her opinion. As discussed above, Rutman's opinions are relevant under the "other source" category and, as Bell contends, should be analyzed using the "same factors" as those used to evaluate medical opinions from "acceptable medical sources," <u>see</u> SSR 06-3p, 2006 WL 2329939, at *4, as "[t]hese factors represent basic principles that apply to the consideration of all opinions" from all "medical sources" and "other sources"; <u>see also</u> 20 C.F.R. § 416.927(c)(2)–(c)(6) (listing as applicable factors, <u>inter alia</u>, length of treatment relationship, frequency of examination, nature and extent of treatment relationship, supportability of opinion, consistency of opinion with record as a whole, and specialization).

Additionally, to the extent the ALJ rejected Rutman's opinions due to a lack of supporting notes, the ALJ's characterization of the record is not wholly accurate. Rutman, who served as Bell's therapist over a period of years, from 2009 until 2014, submitted two "Narrative Summaries" (<u>see</u> CAR 1062–63; 1093), as well as a "Client Intake" page (<u>see</u> <u>id.</u> 1061) and an "Annual Reassessment" (<u>see</u> <u>id.</u> 1094), all of which pertained to her observation and treatment of Bell. If the ALJ thought the above-referenced documentation was not sufficiently detailed, she was required to conduct "an appropriate inquiry" to develop the record. <u>See</u> <u>Smolen</u>, 80 F.3d at 1288 (holding ALJ has "a special duty to fully and fairly develop the record" (internal quotation and citation omitted); finding, if ALJ "thought he needed to know the basis of [physicians'] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them").

Accordingly, the Court finds the ALJ erred by failing to provide sufficient reasons for rejecting Rutman's opinions. The Court further finds such error was not harmless, as Rutman's opinions bear directly on the central issue of Bell's ability to work and cover periods of time beyond those covered by Drs. Goette and Mason.

### 2.    Glozer

In a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" (CAR 1400–02), dated December 30, 2014, Glozer, using SSA-defined ratings, assessed Bell's ability to perform work-related activities on a sustained basis.  In particular, she found Bell had: (1) "moderate" limitations in understanding, remembering, and carrying out "simple instructions" and in making judgments on "simple work-related decisions" (see id. 1400); (2) "marked" or "extreme" limitations as to "complex" instructions and decisions (see id.); (3) "marked" limitations in interacting appropriately with the public and with supervisors (see id. 1401); and (4) "extreme" limitations in responding appropriately to "usual work situations and to changes in a routine work setting" (see id.).[24]  Glozer also found Bell's ability "to tolerate noise, large amounts of people, raised voices, feedback, [and] chaotic environme[nts] is severely impaired due to her mental health."  (See id.)

The ALJ gave "some weight" to Glozer's opinion, "in view of [the] balance of the records"; she "agree[d] that the claimant has some mental limitations, but her daily activities and the other medical evidence of record show that the claimant has fewer mental limitations."  (See id. 48.)

An explanation of such general nature is inadequate, as the Court cannot determine which parts of Glozer's opinion the ALJ accepted and which parts she rejected, and thus cannot "follow the adjudicator's reasoning," see SSR 06-3p, 2006 WL 2329939, at *6, let alone assess its merit.  The ALJ's references to Bell's "daily activities" and "other medical evidence of record" are too broad to qualify as "germane reasons" for discounting Glozer's opinion.  See Molina, 674 F.3d at 1111–12 (holding ALJ gave "germane reasons" for discounting opinions of "other source" where ALJ noted use of check-the-box form without supporting reasoning or clinical findings, as well as conclusory nature of source's opinions, which opinions conflicted not only with source's

---

[24] As defined in the above-referenced form, a "moderate" limitation in a given area signifies the claimant "is still able to function satisfactorily," whereas a "marked" limitation signifies "a substantial loss in the ability to effectively function" and an "extreme" limitation signifies "no useful ability to function."  (See CAR 1400.)

United States District Court
Northern District of California

own prior assessment but also with examining psychiatrist's opinion).  Moreover, such error is not harmless as Glozer's findings described limitations far greater than those described by the doctors on which the ALJ relied.

**D.    Vocational Hypothetical; Non-Disability Finding**

Bell contends the ALJ's finding of non-disability at step five of the sequential process is not supported because "it is based on a vocational hypothetical . . . which does not include all of [] Bell's limitations."  (See Pl.'s MSJ at 25:12–14.)

The ALJ asked the VE to assume a scenario in which an individual could perform light work, subject to certain limitations, namely: occasional postural activities, use of a cane for walking and performing such postural activities, no heights or heavy or hazardous machinery, a "simple and routine" job "with a maximum SVP of 2," and restrictions on interactions with the general public, co-workers, and supervisors.  (See CAR 92.)  The VE then identified three "examples" of jobs existing in the regional and national economy that satisfied the ALJ's hypothetical, including one job at SVP level 1 and two jobs at SVP level 2.  (See id. 93.)  Subsequently, as noted above, the ALJ found Bell was "not disabled" because she could make a "successful adjustment to other work," as identified by the VE.  (See id. 50.)

"Hypothetical questions posed to a [VE] must set out all the limitations and restrictions of the particular claimant, including pain and an inability to engage in certain activities[;] [i]f the assumptions in the hypothetical are not supported by the record, the [VE's] opinion that a claimant is capable of working has no evidentiary value."  Russell v. Sullivan, 930 F.2d 1443, 1445 (9th Cir. 1991) (emphasis in original) (internal citation omitted), departed from on other grounds in Sorenson v. Mink, 239 F.3d 1140 (9th Cir. 2001).

Here, as discussed above, the ALJ did not include in her RFC finding numerous limitations identified by Bell and medical sources.  In light of the ALJ's failure to adequately explain her rejection of such limitations, the hypothetical the ALJ posed to the VE was incomplete, and the ALJ thus erred in relying on the VE's identification of jobs

United States District Court
Northern District of California

Bell could perform.  See Russell, 930 F.3d at 1445 (holding VE's opinion, based on hypothetical that omitted "significant limitations" on claimant's ability to perform certain activity, "had no evidentiary value").

**E.    Remand**

As noted above, Bell argues that, in light of the ALJ's improper rejection of her allegations and the above-referenced opinions, the Court should credit such evidence, find her disabled, and remand her case for an immediate award of benefits.  In particular, Bell contends the following evidence establishes her entitlement to benefits: (1) her own allegations as to her inability to work on a sustained basis; (2) Dr. Goette's and Dr. Mason's limitations on lifting and the number of hours she could work; (3) Dr. Rizzo's opinions regarding her anticipated absences and "substantial loss" of mental abilities (see Pl.'s MSJ at 21:5–6); and (4) Rutman's and Glozer's opinions regarding her mental state.

"A remand for an immediate award of benefits is appropriate . . . only in rare circumstances," see Brown-Hunter, 806 F.3d at 495 (internal quotation and citation omitted), namely, where the following three "requirements" are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand," see Garrison, 759 F.3d at 1020.  Even if such requirements are met, however, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the reviewing court's] discretion."  See Treichler v. Commissioner, 775 F.3d 1090, 1101–02 (9th Cir. 2014) (internal quotation and citation omitted); see also Brown-Hunter, 806 F.3d at 495 (holding court "retain[s] flexibility in determining the appropriate remedy") (internal quotation and citation omitted).

With respect to the initial requirement, the Court notes that "[a]dministrative proceedings are generally useful where the record has [not] been fully developed, there

27

is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time."  See <u>Treichler</u>, 775 F.3d at 1101 (alteration in original) (internal quotations and citations omitted).  A reviewing court must assess "whether there are outstanding issues requiring resolution <u>before</u> considering whether to hold that the claimant's testimony is credible as a matter of law." See <u>Brown-Hunter</u>, 806 F.3d at 495 (emphasis in original) (internal quotation and citation omitted) (explaining "[t]he touchstone for an award of benefits is the existence of a disability, not the agency's legal error").

Here, the Court has considered the four areas of evidence on which Bell relies for an immediate award, and although, as discussed above, the Court has found the ALJ committed a number of legal errors, the Court does not find further proceedings "would serve no useful purpose."  See <u>Garrison</u>, 759 F.3d at 1020.

First, Bell's testimony raises some questions about the extent of her symptoms and limitations.  See <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003) (citing cases remanding for reconsideration of credibility determinations).  For example, while Bell reported "chronic pain" (<u>see</u> CAR 312), she testified that, with medication, her pain was "mainly . . . under control" (<u>see</u> <u>id.</u> 76).  Further, while she reported a need for "frequent breaks" (<u>see</u> <u>id.</u> 312), a need to stretch after sitting for 20 minutes, an inability to stand "very long" (<u>see</u> <u>id.</u>), and a need to rest for 10–20 minutes after walking one block, she also testified to engaging in activities that could be inconsistent with those limitations, such as completing monitoring shifts lasting three and four hours at the rehabilitation facility, working at a computer lab for two-hour periods, and taking public transportation on a regular basis.  Also, while she described problems with fatigue, including the need to lie down and take naps, she nonetheless was able to complete her six-month rehabilitation program and did so with a total of seven to eight absences, i.e., a little more than one absence per month.

Next, Dr. Goette and Dr. Mason set forth work-related restrictions lasting from three to six months; none of their opinions requires a finding that Bell was or would be

United States District Court
Northern District of California

disabled for twelve continuous months, the period of time required to establish disability. See 20 C.F.R. § 404.905(a) (effective Aug. 24, 2012). In addition, the ALJ did not have an opportunity to evaluate either of Dr. Mason's two opinions. See Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (remanding for further proceedings, rather than award of benefits, where "critical portions" of treating doctor's testimony "were not before the ALJ at all but were presented only to the [AC]"; explaining "[w]hile we properly may consider the additional evidence presented to the [AC] in determining whether the . . . denial of benefits is supported by substantial evidence, it is another matter to hold on the basis of evidence that the ALJ has had no opportunity to evaluate that [claimant] is entitled to benefits as a matter of law").

Similarly, the ALJ had no opportunity to evaluate Dr. Rizzo's opinion. Although Dr. Rizzo opined that Bell has "a substantial loss" of ability pertaining to "simple instructions" and "simple work-related decisions" (see CAR 1442), Bell's own description of her monitoring and janitorial work could call that opinion into question.

Lastly, Bell's monitoring and janitorial work could, likewise, call into question the reports of Rutman and Glozer, who opined, respectively, that Bell "is incapable of performing work-related activities" (see id. 1093 (Rutman report) (citing Bell's "inability to focus and concentrate for extended periods of time" and "unreliability in terms of schedule and follow-through")) and that Bell has "extreme" limitations in "[r]espond[ing] appropriately to usual work situations" (see id. 1401 (Glozer report)).

In sum, given that the ALJ did not have before her for evaluation all of the significant opinions bearing on Bell's ability to work, and given the other issues raised above, the Court finds it appropriate to remand for further proceedings. See Treichler, 775 F.3d at 1101–02; Harman, 211 F.3d at 1181 (holding "[b]ecause neither the ALJ nor the [VE] had the full picture before them, remand for further proceedings is particularly appropriate").

///

///

1

## CONCLUSION

2      For the reasons stated above, Bell's motion for summary judgment is hereby

3 GRANTED, the Commissioner's cross-motion for summary judgment is hereby DENIED,

4 and the action is remanded for further proceedings consistent with this decision.

5      **IT IS SO ORDERED.**

6

7 Dated: August 22, 2017

8 MAXINE M. CHESNEY
United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28